**HARRIS TRUST AND SAVINGS BANK,** and Martin Den Hartog, as co-guardians of the Estate of Sandra Den Hartog, a disabled person, and Martin Den Hartog, individually,

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,** a Delaware corporation; Campbell Soup Company, a New Jersey domestic corporation.

**CAMPBELL SOUP COMPANY,** a New Jersey domestic corporation, Defendant/Counter–Plaintiff

v.

**HARRIS TRUST AND SAVINGS BANK,** and Martin Den Hartog, as co–guardians of the Estate of Sandra Den Hartog, a disabled person, and Martin Den Hartog, individually, Plaintiffs/Counter–Defendants.

No. 93 C 5083.

United States District Court, N.D. Illinois, Eastern Division.

April 15, 1994.

Herbert F. Stride, Vickie V. Blum, Herbert F. Stride, Ltd., Chicago, IL, for Harris Trust and Savings Bank and Martin Den Hartog, Estate of Sandra Den Hartog, plaintiffs and counter-defendants.

J. Robert Geiman, William A. Chittenden, III, Douglas J. Varga, Peterson & Ross, Chicago, IL, for Provident Life and Accident Ins. Co., defendant.

Scott B. Greene, Jeffrey C. Clark, Pope, Cahill & Devine, Ltd., Robert J. Bates, Jr., Bates, Meckler, Bugler & Tilson, Chicago, IL, for Campbell Soup Co., defendant and counter-claimant.

### MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Harris Trust and Savings Bank and Martin Den Hartog, co-guardians of the estate of Sandra Den Hartog ("the estate"), sue Provident Life and Accident Insurance Co. ("Provident") and Campbell Soup Co. ("Campbell") (collectively "the defendants"). The estate sues for a declaration that it is entitled to be reimbursed for medical expenses under an employee benefit plan. The estate also seeks to recover expenses it claims are owed under the plan. The benefit plan, which is funded by Campbell and administered by Provident, is governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, et seq. ("ERISA").[1] Campbell counterclaims for reimbursement of medical expenses it

---

1. The estate does not state claims under ERISA. However, the estate concedes that its common law action is preempted by ERISA. *See* Estate Resp. to Provident at 2; *see also Brundage–Peter-son v. Compcare Health Services Insurance Corp.,* 877 F.2d 509, 510 (7th Cir.1989); *see generally* 29 U.S.C. § 1002(1)(A).

advanced to the estate under the plan. The parties file cross-motions for summary judgment.[2]

## BACKGROUND

In September 1985, Sandra Den Hartog was involved in an automobile accident at a railroad crossing, and was rendered a quadriplegic. *See* Estate 12(m) Stmt. ¶ 11. Since the accident, Sandra has been totally disabled and dependant on supportive care; she will be dependant for life. *See* Campbell 12(m) Stmt. ¶ 5. The annual cost for Sandra's treatment is about $50,000. *See* Campbell 12(m) Stmt. ¶ 76.

After the accident, Sandra's father, Martin Den Hartog, opened a probate estate on Sandra's behalf and, as her guardian, filed a personal injury suit against the responsible parties.[3] *See* Estate 12(m) Stmt. ¶ 14. On January 27, 1989, the suit was settled for $7 million. *See* Campbell 12(m) Stmt. ¶ 32. The settlement generates sufficient annual income to cover Sandra's treatment expenses. *Id.* ¶ 77.

At the time of Sandra's accident, Martin Den Hartog was employed by Specialty Brands, Inc. ("Specialty Brands") and worked at Specialty Brand's Thornton, Illinois plant. *See* Estate 12(m) Stmt. ¶ 8. Martin Den Hartog was a participant in Specialty Brand's employee benefits plan, which was underwritten and administered by Lincoln National Life Insurance Co. ("the Lincoln plan"). *Id.* ¶¶ 9–10. As Martin Den Hartog's dependant, Sandra received medical benefits under the Lincoln plan. *Id.* ¶ 12. Lincoln paid the medical expenses relating to Sandra's disability (hereinafter Sandra's "expenses")[4] until March 31, 1989. *See* Campbell 12(m) Stmt. ¶¶ 6, 28.

On March 24, 1988, Campbell acquired the Thornton plant from Specialty Brands. *See* Estate 12(m) Stmt. ¶ 32. Consequently, Martin Den Hartog became an employee of Campbell—for whom he continues to work. Upon Campbell's acquisition of the Thornton plant, Martin Den Hartog became a participant in Campbell's group benefit plan, which is sponsored and fully-funded by Campbell and is administered by Provident ("the Provident plan"). *See* Provident 12(m) Stmt. ¶¶ 9–17, 28.

The Provident plan, which has covered the Martin Den Hartog family from the day that Campbell acquired the Thornton plant, provides Thornton employees and their families with substantially the same benefits that were available to them under the Lincoln plan. *See* Campbell 12(m) Stmt. ¶¶ 14, 16; *see also* Estate Exs. 4 and 5. Between March 1988 and June 1989, when Campbell published a new summary of benefits for Thornton employees, Martin Den Hartog was advised to rely on the terms of the Lincoln plan in determining his family's benefits coverage. *See* Campbell 12(m) Stmt. ¶¶ 16–17.

Sandra continued to have her expenses paid through the Lincoln plan until March 31, 1989, a year after she first became covered under the Provident plan. *See* Estate 12(m) Stmt. ¶¶ 35–36. Sandra received extended benefits pursuant to the Lincoln plan's twelve-month post-termination coverage extension for disabled eligible dependents. *Id.* ¶ 33.[5] As part of the settlement of the lawsuit, the estate repaid more than $400,000 for the expenses that had been covered by the Lincoln plan in light of the plan's third-party limitations provision. *See* Campbell 12(m) ¶¶ 35–36; Campbell Ex. 9.

---

**2.** The estate moves for summary judgment against Campbell on the claims in its complaint. Campbell moves for summary judgment on the estate's claims and on its counterclaim. Provident moves for summary judgment on the estate's claims.

**3.** The defendants in the suit were Conrail and the driver of the train, Peter Beck. Plaintiff Harris Trust and Savings Bank is co-guardian of the probate estate.

**4.** This opinion concerns Sandra's coverage for disability expenses (*i.e.,* expenses relating solely to Sandra's disability), which are referred to simply as "expenses" for simplicity. The parties do not dispute Sandra's eligibility to recover other medical expenses (*e.g.,* reimbursement for routine medical visits unrelated to her disability).

**5.** Under the Provident plan, expenses for preexisting conditions are not covered until a year after the plan takes effect. *See* Estate Ex. 5 at 25.

In April 1989, when the Lincoln plan's coverage extension expired, Martin Den Hartog submitted claims to the Provident plan for reimbursement of Sandra's expenses. *See* Campbell 12(m) Stmt. ¶ 52. Campbell directed Provident to pay Sandra's expenses under the plan. *See* Estate 12(m) Stmt. ¶ 46. Between April 1, 1989 and June 15, 1991, Campbell paid the estate $290,241.53 through the Provident plan for Sandra's expenses. *See* Campbell 12(m) Stmt. ¶ 63. In July 1989, Provident sent Martin Den Hartog two repayment acknowledgement forms seeking information about the settlement and asserting a right to be repaid for Sandra's expenses. *Id.* ¶¶ 53–54. Martin Den Hartog did not sign the repayment agreements nor did he return them to Provident; instead he forwarded the forms to the estate's attorney. *See* Campbell 12(m) Stmt. ¶¶ 58–59.

In June 1991, Campbell instructed Provident to stop paying Sandra's benefits under the plan. *See* Provident 12(m) Stmt. ¶ 36. Campbell decided to discontinue payments because of its understanding that Sandra's expenses were not covered in light of the plan's third-party exclusion. *Id.* ¶¶ 100–07. Because Sandra's disability was caused by third parties and because she had been awarded a cash settlement to compensate her for her disability, Campbell concluded that Sandra was not entitled to recover expenses under the plan. *Id.*

The estate sues for a declaration that Sandra's expenses are covered under the Provident plan. The estate also seeks to recover Sandra's expenses for claims it has presented to the Provident plan since June 15, 1991. Campbell counterclaims for reimbursement of the money it paid Sandra between April 1989 and June 1991. Campbell maintains that the payments were "advances" in expectation of future repayment.

## DISCUSSION

The parties file cross-motions for summary judgment. Summary judgment must be granted when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477

U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Unterreiner v. Volkswagen of America, Inc.,* 8 F.3d 1206, 1209 (7th Cir.1993). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Stewart v. McGinnis,* 5 F.3d 1031, 1033 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994).

In this case, the cross-motions raise three distinct issues: First, Provident contends that it is not a proper party to this suit because it is not a "fiduciary" of the Provident plan (as that term is defined by ERISA). Second, the estate asserts that the plain terms of the Provident plan demonstrate that Campbell is liable for Sandra's expenses (while the defendants respond that the Provident plan unambiguously establishes that they are *not* liable for Sandra's expenses). Finally, Campbell claims that it must be reimbursed for the money it "advanced" to Sandra before it ordered Provident to stop payments in June 1991.

## 1. Fiduciary Under ERISA

In moving for summary judgment, Provident contends that, as a matter of law, it cannot be liable to the estate. Provident asserts that under ERISA, it is not a "fiduciary" of the Provident plan, and thus is not a proper party in this suit challenging Sandra's right to recover expenses under the plan. Provident's contention is convincing.

■ A suit regarding a benefits claim may not be maintained against an entity that is not a fiduciary of the benefits plan. Under ERISA, a participant in a benefits plan may sue "any person who is a fiduciary with respect to [the] plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" by ERISA. *See* 29 U.S.C. §§ 1109(a); 1132(a)(1). Thus, the estate may only sue parties who are deemed to be fiduciaries of the plan. *Id.; see also Pappas v. Buck Consultants, Inc.,* 923 F.2d

531, 535 (7th Cir.1991).[6]

■ Provident bases its argument on ERISA's definition of fiduciary. ERISA defines a plan fiduciary as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Provident asserts that because it does not exercise discretionary authority or perform discretionary functions in administering the Provident plan, it is not a fiduciary of the plan.

The undisputed evidence demonstrates that Provident's duties with respect to the plan are ministerial and non-discretionary. The Provident plan is wholly-funded by Campbell. Provident agreed to process benefit claims on Campbell's behalf pursuant to Campbell's contractually-regulated directions. Provident administers the plan for Campbell under an administrative services agreement in which Provident is required to "follow the claims administration procedures and practices desired by [Campbell]." *See* Provident Ex. 2, Attach. A, ¶ 2(c). Provident also must make all benefits eligibility decisions "in accordance with the Benefit Program and claims administration procedures

and practices" created by Campbell. *Id.* ¶ 2(f). In addition, pursuant to the agreement, all disputed and non-routine claims are to be decided by Campbell; all problems in administering the program are to be reported to Campbell; and Provident must make a monthly accounting of all payments that it processes. *Id.* ¶¶ 2(i),(k),(*l* ). Provident processes claims on Campbell's behalf subject to Campbell's direction and control. Thus, Provident does not exercise discretionary authority in administering the plan.[7]

Indeed, the undisputed evidence demonstrates that Provident exercises no discretionary functions with respect to Sandra's claims. Provident processed Sandra's request for reimbursement pursuant to the terms of the plan: Campbell, not Provident, approved the payment of Sandra's claims in 1989; Campbell, not Provident, ordered the discontinuation of benefits payments in 1991. *See* Provident 12(m) Stmt, ¶¶ 31–34, 35–36.[8] Provident administered Sandra's benefits under Campbell's direction and control.[9]

In a number of decisions, courts have held that benefit plan administrators with duties analogous to Provident's are not ERISA fiduciaries. In *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir. 1992), the Seventh Circuit noted that "the existence of discretion is the sine qua non of fiduciary duty." Accordingly, the Seventh Circuit ruled that a plan administrator whose duties were "clerical, mechanical, ministerial, [but] not discretionary," and who "performed [a] list of ministerial functions," was not an ERISA fiduciary. *Id.* Similarly, in *Gelardi v. Pertec Computer Co.*, 761 F.2d 1323, 1325 (9th Cir.1985), the Ninth Circuit held that a plan administrator that "performs only ad-

---

6. The estate sues as the legal representative of participants in the Provident plan.

7. The estate's contention that Provident exercises discretionary authority is unconvincing. The estate mischaracterizes Provident's authority to make mundane decisions in processing claims pursuant to Campbell's instructions. Provident's decision-making authority is limited to ministerial, day-to-day functions. Pursuant to the administrative services agreement, Campbell has retained all discretionary authority.

8. The estate's attempt to create a factual dispute is unavailing. The estate's evidence merely re-

flects the fact that Provident processed Sandra's claims—its function under the administrative services agreement. However, the undisputed evidence demonstrates that Campbell made the ultimate decision to deny Sandra's claims.

9. The estate's argument that Provident had discretion to approve or deny Sandra's claims under the plain language of the plan's third-party exclusion is unpersuasive. Although the plan states that Provident may elect to award benefits, it has been demonstrated by undisputed evidence that the party that actually makes the elections is Campbell.

ministrative functions [such as] processing claims within a framework of policies, rules, and procedures established by others," is not a fiduciary of the plan.

Finally, in *Harris v. Provident Life & Accident Ins. Co.*, 776 F.Supp. 1450 (D.Or. 1991), the court found that Provident was not a fiduciary of a plan regulated by an administrative services agreement nearly identical to the one at issue in this case. The *Harris* court wrote:

> A person who performs purely ministerial functions is not a fiduciary. Ministerial functions include applying rules which determine the eligibility of a participant for benefits, calculating benefits, orienting new participants and advising participants of their rights under the plan....

*Harris*, 776 F.Supp. at 1453. The *Harris* court found that Provident was not a fiduciary under the agreement because it had no discretionary authority or control with respect to the plan.

Based on the undisputed evidence, it is clear that Provident has no discretionary authority with respect to the Provident plan or with regard to Sandra's claims. Provident is not a fiduciary of the Provident plan. Accordingly, Provident is not properly named as a defendant in this suit.

## 2. Discontinuation Of Benefits

Between April 1989 and June 1991, Campbell directed the Provident plan to pay Sandra's expenses. On June 15, 1991, Campbell discontinued payments. The estate contends that under the terms of the Provident plan, Campbell must pay Sandra's expenses. Campbell responds that the plan excludes Sandra from coverage for expenses relating to her preexisting disability. The parties rely on their interpretations of the plan and seek a determination by the court of the legal effect of the plan's language.

■ Pursuant to ERISA, every benefit plan must be "established and maintained pursuant to a written agreement." 29 U.S.C. § 1102(a)(1). In addition, plan fiduciaries must act "in accordance with the documents and instruments governing the Plan." 29 U.S.C. § 1104(a)(1)(D). Finally, plan participants must be given a summary description of the plan that is "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the Plan." 29 U.S.C. § 1022.

Immediately after Sandra's accident, the Lincoln plan paid Sandra's expenses. The Provident plan took effect three years later. The court must determine when the Provident plan went into effect, whether Sandra's expenses are covered under the plan, and whether the Provident plan reasonably apprised Martin Den Hartog of Sandra's coverage. In construing the plan, the court uses federal common law of contract interpretation. *See Reiherzer v. Shannon*, 581 F.2d 1266, 1272 (7th Cir.1978). However, in fashioning federal common law, the court looks to the contract law of Illinois, the forum state. *See Fox Valley & Vicinity Construction Workers Pension Fund v. Brown*, 897 F.2d 275, 281 (7th Cir.) (*en banc*), *cert. denied*, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990).

### a. The Provident plan

■ At the time of Sandra's accident, through March 1988, the Martin Den Hartog family was covered by the Lincoln plan. When Campbell acquired the Thornton plant, it instituted the Provident plan. At the time that the Provident plan went into effect, no written plan summary was distributed to Thornton employees. Instead, employees were told: (1) their benefits would remain the same as under the Lincoln plan; and (2) to continue to refer to the Lincoln plan summary for coverage questions. Campbell distributed a revised plan summary for the Provident plan in June 1989. Thus, the Provident plan was in effect with terms identical to those of the Lincoln plan between March 1988 and June 1989. *See James v. National Business Systems, Inc.*, 924 F.2d 718, 720 (7th Cir.1991) ("the plan need not be in writing, provided it is a 'reality' "). Since

June 1989, the Provident plan has been governed by terms of the written plan summary.[10]

### b. Acts of third parties

Campbell contends that it is not required to pay Sandra's benefits in light of the Provident plan's "Acts of Third Parties" exclusion. The estate asserts that the exclusion does not apply to Sandra's situation. Both sides insist that the provision unambiguously supports their position.

The Provident plan's third-party exclusion provides as follows:

> Medical care benefits are not payable to or for a person covered under this Plan when the Injury or Illness to the covered person occurs through the act or omission of another person. However, the Provident may elect to advance payment for medical care expenses incurred for an Injury or Illness in which a third party may be liable. For this to happen, the covered person must sign an agreement with the Provident to pay the Provident in full any sums advanced to cover such medical expenses from the judgment or settlement he or she receives.

Campbell Ex. 8 at 25. Campbell reasons that the provision unambiguously applies to Sandra's situation: Because Sandra received a $7 million cash settlement for her disability, Campbell concludes that expenses relating to her disability are not covered under the plan. The estate responds that the exclusion does not affect Sandra's claim. The estate asserts that the exclusion had not been instituted when Sandra first became covered under the plan. The estate also contends that the language of the provision clearly does not apply to Sandra's situation.

### i. Continued coverage

The estate argues that the Provident plan's third-party exclusion does not disallow Sandra's expenses because the provision had not been published when Sandra first became covered under the plan. The Provident plan was instituted on March 24, 1988; Sandra's expenses were first paid through the plan on April 1, 1989; the Provident plan's benefits summary (which includes the third-party provision) was not distributed to Thornton employees until June 1989. The estate concludes that the exclusion cannot retroactively apply to Sandra's claims—which were asserted *before* the exclusion went into effect. The estate also contends that Sandra's expenses are covered because Campbell employees assured Martin Den Hartog that Sandra would be covered. These contentions are belied by the undisputed evidence.

Although the Provident plan summary had not been published when Sandra's expenses were first paid, the third-party exclusion was already in effect. When the Provident plan was instituted, Campbell representatives told Martin Den Hartog that the substance of the plan would be identical to the Lincoln plan. *See* Campbell 12(m) Stmt. ¶ 16. Accordingly, Martin Den Hartog was advised to refer to the Lincoln plan summary in determining coverage questions. *Id.* ¶ 17. Thus, Sandra's coverage is the same as it had been under the Lincoln plan.

It is undisputed that the Lincoln plan summary had a similar third-party exclusion and that Martin Den Hartog was aware of that exclusion.[11] *See* Campbell 12(m) Stmt. ¶ 13. In fact, after the settlement, the estate repaid over $400,000 pursuant to the Lincoln plan's third-party provision. Accordingly, there was a third-party exclusion in effect when Sandra first became covered under the Provident plan. Moreover, Martin Den Hartog was aware of the exclusion—because it

---

10. Actually, a new Provident plan summary was distributed to Thornton employees in 1991. The parties agree that the 1991 plan did not alter the substance of the provisions at issue in this dispute.

11. The Lincoln plan contained the following third-party limitation:

> If an individual insured under the policy has medical or dental charges as a result of the negligence or intentional act of a third party, and makes a claim to Lincoln National for benefits under the policy for such charges, the insured person (or legal representative of a minor or incompetent) must agree in writing to repay Lincoln National from any amount of money received by the insured individual from the third party, or its insurer.

Estate Ex. 4 at 23.

was included in the Lincoln plan summary.[12] The exclusion existed under the Lincoln plan, and upon Campbell's acquisition of the Thornton plant, the provision became part of the Provident plan. The estate's contention that there was no third-party exclusion in effect when Sandra's coverage commenced must be rejected.

Furthermore, the estate's contention that Martin Den Hartog was advised that Sandra's expenses "would be covered" is erroneous. In fact, Campbell's representatives told Martin Den Hartog that Sandra would receive the *same* coverage that she had received under the Lincoln plan. *See* Campbell 12(m) Stmt. ¶¶ 15–16. Because the Lincoln plan had a third-party exclusion, Martin Den Hartog reasonably should have concluded that the Provident plan would have the same provision. Campbell's reassurances that Sandra would continue to receive the same coverage could not reasonably be construed to mean that she would be covered for expenses that were excluded under the Lincoln plan. Clearly, the third-party exclusion in the Provident plan controls Sandra's case.

### ii. Covered person

■ The estate contends that even if the third-party provision is in effect, it does not cover Sandra because she was not covered under the Provident plan when she became disabled. The estate notes that the exclusion denies coverage "*when the Injury or Illness to the covered person occurs* through the act or omission of another person." (Emphasis added). The estate reasons that the plain language of the exclusion only applies when an injury "occurs" to a "covered person"; the estate concludes that because Sandra was not a covered person when she was injured, the exclusion must not apply to her. Alternatively, the estate contends that the language is at least ambiguous and thus must be construed in favor of the policyholder. Camp-

bell responds that the provision unambiguously disallows coverage for Sandra's expenses.

The third-party exclusion is not ambiguous. The provision clearly denies coverage for Sandra's expenses. Although the exclusion is worded somewhat inartfully, as a whole it clearly notifies policyholders that the Provident plan does not cover benefits expenses to an injury caused by a third party. *See Hammond v. Fidelity and Guaranty Life Ins. Co.*, 965 F.2d 428, 430 (7th Cir.1992) ("we will not artificially create ambiguity where none exists"); *Board of Trade of the City of Chicago v. Dow Jones & Co., Inc.*, 98 Ill.2d 109, 74 Ill.Dec. 582, 588, 456 N.E.2d 84, 90 (1983) ("words derive their meaning from the context in which they are used"). The phrase "when the injury … occurs," read in the context of the entire provision, does not signify to an ordinary reader that the exclusion applies only if the injury occurs while the person is covered. Instead, the phrase "when the injury … occurs" clearly indicates that the exclusion only is triggered when (*i.e.*, if) an injury caused by a third person were to occur.[13]

Similarly read in context, the phrase "covered person" does not indicate to a reasonable reader that the exclusion is limited to plan participants who were covered at the time of their injuries. The estate's reading of "covered persons" would make the exclusion absurd: Under the estate's interpretation, the plan would not pay the expenses of people who are injured while they are covered by the plan, yet it would pay the expenses of people who are injured while not covered by the plan. The estate's interpretation cannot be supported by reading the third-party exclusion as a whole.

The third-party provision unambiguously disallows Sandra's expenses. The estate's interpretation is not supported by the exclu-

---

**12.** Even if Martin Den Hartog were unaware of the Lincoln plan's exclusion, knowledge of the provision would be imputed to him because he had been given a copy of the Lincoln plan summary. However, Martin Den Hartog clearly was aware of the Lincoln plan's third-party provision because he signed a reimbursement agreement with Lincoln in 1986. *See* Campbell 12(m) Stmt. ¶ 13.

**13.** Thus, the phrase should be understood to mean: "if an injury happens to occur…." The Lincoln plan summary, which was in effect when the Provident plan was instituted, used the word "if" rather than "when." *See* Note 11.

sion read as whole or by common sense. The provision would notify the average covered person that expenses attributable to the acts or omissions of third parties are not payable under the plan. The third-party exclusion applies to Sandra's case.

### c. Pre-existing conditions

■ The estate contends that even if the Provident plan's third-party exclusion applies, Sandra's expenses nevertheless are covered under the plan in light of the plan's exclusion for pre-existing conditions. The exclusion provides as follows:

> In the event you or an eligible dependent is totally disabled on the date your benefits with respect to your eligible dependent becomes effective, no benefits will be payable under this Plan for expenses incurred for treatment of the condition causing the total disability until ... the date a person has been covered under this Plan for a period of 12 consecutive months.

Campbell Ex. 8 at 40. Under this provision, coverage for a pre-existing disability may not begin until after a person has been covered under the Provident plan for a year. Indeed, Sandra was notified that her expenses (*i.e.*, expenses regarding her disability) would not be paid for the first year. Consequently, the Lincoln plan paid Sandra's expenses for a year under that plan's extended coverage provision. The estate reasons that the language of the pre-existing conditions provision unambiguously entitles Sandra to be reimbursed for her disability expenses after she had been covered under the Provident plan for a year.

The estate contends that the pre-existing conditions exclusion would be meaningless if Sandra would not be eligible for benefits after a year. The estate insists that the phrase "no benefits will be payable ... until" a year of coverage has elapsed clearly indicates that coverage must begin after a year. The estate also argues that Sandra's expenses are payable because the provision does not expressly preclude coverage (or provide for reimbursement) for third-party expenses. Both of these contentions are belied by the plain words of the plan summary.

The estate's first argument, that the plan definitely pays expenses for pre-existing conditions as soon as a person has been covered for a year, is insupportable. The provision's statement that pre-existing expenses will not be paid until a year has elapsed does not imply that any and all pre-existing expenses will be paid. The exclusion appears in a section of the plan entitled: "BENEFITS WILL NOT BE PAYABLE UNDER THE PLAN FOR...." A reasonable reader would conclude that the pre-existing conditions provision was a limitation of benefits, not a statement of entitlement to coverage. Provisions of a contract must be interpreted in light of their context. *See Board of Trade of the City of Chicago v. Dow Jones & Co., Inc.*, 98 Ill.2d 109, 74 Ill.Dec. 582, 588, 456 N.E.2d 84, 90 (1983). A reasonable person would not have concluded that the exclusion contains a affirmative promise of coverage.

The estate's argument that the exclusion does not expressly provide for reimbursement is also unpersuasive. In construing an agreement, the court must make a "fair and reasonable interpretation based on consideration of all its language and provisions." *Shelton v. Andres*, 106 Ill.2d 153, 87 Ill.Dec. 954, 957, 478 N.E.2d 311, 314 (1985). Thus, the court must look to the agreement as a whole in interpreting individual provisions. *Id.* Campbell directed Provident plan to pay Sandra's expenses after April 1, 1989. According to Campbell, the payments were advances conditioned upon future repayment pursuant to the third-party exclusion. The estate contends that the payments are not reimbursable because the pre-existing conditions exclusion does not contain a reimbursement or subrogation provision. The estate erroneously reads the pre-existing conditions provision in isolation; the estate fails to construe the plan as a whole to put particular provisions into their proper context.

The plan contains a valid third-party exclusion that purports to apply to all benefits claims. The estate concedes that other provisions of the plan—such as deductibles and limitations in covered expenses—apply to Sandra's expenses, although these provisions are not expressly referenced in the pre-existing condition exclusion. *See* Campbell, 12(m)

Stmt. ¶ 10. By the same reasoning, Sandra's pre-existing expenses also must come within the scope of the third-party exclusion. Sandra's expenses are not payable under the pre-existing conditions exclusion and are disallowed under the third-party exclusion. Under the unambiguous terms of the plan summary, Sandra expenses are not payable under the Provident plan.[14]

### 3. Reimbursement of "Advances"

 Campbell counterclaims for $290,-241 that it "advanced" to Sandra between April 1989 and June 1991 under the Provident plan's third-party exclusion. In light of the finding that the third-party exclusion applies to disallow Sandra's expenses, the payments indeed must be deemed advances in expectation of repayment. Campbell now counterclaims for unjust enrichment. *See Fox Valley & Vicinity Construction Workers Pension Fund v. Brown,* 897 F.2d 275, 281 (7th Cir.) (*en banc*), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990). The estate responds that even if the payments were meant to be advances, Campbell waived its right to be reimbursed because Martin Den Hartog did not sign a reimbursement agreement.[15] Because the estate was unjustly enriched by receiving advances for Sandra's expenses, the estate must reimburse Campbell.

The estate must reimburse Campbell for the advances. The third-party provision is a coverage limitation; it does not purport to place duties upon Provident or Campbell. The provision provides in pertinent part:

> [T]he Provident may elect to advance payment for medical care expenses incurred for an injury or illness in which a third party may be liable. *For this to happen, the covered person must sign an agreement* with the Provident to pay the Provident in full any sums advanced to cover

such medical expenses from the judgment or settlement he or she receives.

Estate, Ex. 5 at 25 (emphasis added). The exclusion notifies participants that injuries caused by third parties are not covered under the plan. The quoted section of the provision declares that the plan may advance payments to policyholders (*e.g.,* in situations in which legal proceedings of the third-party have not been resolved). However, the participants are warned that they must agree in writing to repay money advanced to them.

In contrast, the provision does not place burdens on Provident or Campbell. The plan administrators simply may "elect" to advance payments in appropriate situations. Campbell did not have a contractual duty to procure a signed reimbursement agreement before paying advances. Thus, the failure to procure Martin Den Hartog's signature on the reimbursement forms was not a waiver of Campbell's legal rights under the agreement.

The conclusion that the estate must reimburse Campbell is supported by *Provident Life & Acc. Ins. Co. v. Waller,* 906 F.2d 985 (4th Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). In *Waller,* the Fourth Circuit ruled that Provident was entitled to reimbursement under a third-party exclusion identical to the one in this case. In *Waller,* the defendant did not sign a repayment agreement as required by the plan. Nevertheless, the Fourth Circuit ruled that Provident could be reimbursed under the doctrine of *quantum meruit. See Waller,* 906 F.2d at 993.

The *Waller* court found that although ERISA does not provide a cause of action for an insurer to recover advances, reimbursement was necessary to prevent unjust enrichment. *See Waller,* 906 F.2d at 993–94. In reaching its decision, the court found that Provident reasonably expected to be reimbursed for its advancements. *Id.* at 994. In addition, the Fourth Circuit found that the

---

14. In light of the finding that the Provident plan unambiguously does not cover Sandra's expenses, it is not necessary to reach the estate's allegations that Campbell intentionally terminated Sandra's coverage because of its inability to sell the Thornton plant. The estate's contested issues of fact are immaterial in the face of the unambiguous terms of the plan.

15. The estate also raises the argument rejected above that the pre-existing condition provision did not contain a reimbursement clause. For the reasons discussed, the argument is unpersuasive.

defendant was aware of the third-party exclusion. *Id.* Finally, the *Waller* court determined that "the interests of society, as reflected by the goals of ERISA and efficient plan administration, would be served by" ordering the defendants to reimburse Provident for advances.

This case is analogous to *Waller:* Campbell reasonably expected to be reimbursed for the advances it directed Provident to make for Sandra's expenses. In addition, Martin Den Hartog was aware of the third-party exclusion in the Lincoln plan summary and in the Provident plan summary—and he was requested to sign a repayment agreement. Finally, the interests of society in efficient plan administration are as compelling in this case as they were in *Waller.* Accordingly, the estate is directed to repay Campbell $290,241.53.[16]

### CONCLUSION

For the foregoing reasons: Plaintiffs' motion for summary judgment is denied; defendant Provident Life and Accident Insurance Company's renewed motion for summary judgment is granted; defendant Campbell Soup Company's renewed motion for summary judgment is granted. Judgment is entered for defendants Provident Life and Accident Insurance Company and Campbell Soup Company and against plaintiffs Harris Trust and Savings Bank and Martin Den Hartog, as co-guardians of the Estate of Sandra Den Hartog. Judgment is entered for counterplaintiff Campbell Soup Company and against counterdefendants Harris Trust and Savings Bank and Martin Den Hartog on the counterclaim in the amount of $290,-241.53. Plaintiffs' motion to strike affirmative defenses and plaintiffs' motion for leave to file response to Campbell's additional statement of facts are moot.

---

**16.** Campbell's request for prejudgment interest lacks merit. Prejudgment interest may be awarded in cases involving violations of federal law. However, the counterclaim does not allege a violation of ERISA. Instead, the counterclaim involves a dispute over reimbursement. *Cf. Lor-* *enzen v. Employees Retirement Plan of Sperry & Hutchinson,* 896 F.2d 228, 236–37 (7th Cir.1990) (award of prejudgment interest justified when insurer violates ERISA to the detriment of policyholders).