57 F.3d 608
 19 Employee Benefits Cas. 1484
 HARRIS TRUST AND SAVINGS BANK and Martin D. Hartog, as
co-guardians of the Estate of Sandra Den Hartog, a
disabled person, and Martin Den Hartog,
individually,
Plaintiffs-
Appellants,
Cross-Appellees,
v.
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, a Delaware
corporation, Defendant-Appellee, Cross-Appellant,
and
Campbell Soup Company, a New Jersey domestic corporation,
Defendant-Appellee.
 Nos. 94-2021, 94-2296.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 6, 1995.
Decided June 19, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied July 14, 1995.
 
 1
 William J. Harte (argued), Vickie Voukidis Blum, Herbert Stride, Stride & Associates, Joan M. Mannix, Harte & Associates, Chicago, IL, for Harris Trust and Sav. Bank, Martin D. Hartog.
 
 
 2
 J. Robert Geiman, William A. Chittenden, III (argued), Douglas J. Varga, Peterson & Ross, Chicago, IL, for Provident Life and Acc. Ins. Co.
 
 
 3
 Scott B. Greene (argued), Jeffrey C. Clark, Phelan, Pope, Cahill & Devine, Chicago, IL, for Campbell Soup Co.
 
 
 4
 Before CUMMINGS and KANNE, Circuit Judges, and GRANT, District Judge.[1]
 
 
 5
 GRANT, District Judge.
 
 
 6
 This action involves a dispute over insurance coverage provided under an employee welfare benefits plan governed by the Employee Retirement Securities Act ("ERISA"). Harris Trust and Savings Bank and Martin Den Hartog, co-guardians of the estate of Mr. Den Hartog's disabled daughter Sandra, brought suit against Campbell Soup Company and Provident Life and Accident, the administrator of Campbell's Group Benefits Plan, seeking a declaration of Sandra's rights under the Plan, specifically her right to continued coverage. Campbell filed a counterclaim under 29 U.S.C. Sec. 1132(a)(3) seeking restitution of benefits it had advanced on Sandra's behalf under the Plan's third party exclusion provision. Cross-motions for summary judgment were filed; the defendants ultimately prevailed; and plaintiffs were ordered to pay $290,241.53 in restitution. See Harris Trust & Savings v. Provident Life and Acc. Ins. Co., 854 F.Supp. 524 (N.D.Ill.1994). The district court, however, denied Provident's motion for attorneys' fees and costs under 29 U.S.C. Sec. 1132(g)(1). This appeal and cross-appeal followed. For the following reasons, we now AFFIRM.
 
 I. BACKGROUND
 
 7
 Sandra Den Hartog was rendered a quadriplegic when an automobile in which she was riding was struck by a train in September 1985. At the time of the accident, Sandra's medical insurance coverage was provided by her father's employer, Specialty Brands, Incorporated. Pursuant to the Specialty Brands' Employee Benefits Plan, all medical expenses relating to the accident were paid by the plan's administrator, Lincoln National Life Insurance Company, subject to a "Third Party Limitation" provision, which provided as follows:
 
 
 8
 If an individual insured under the policy has ... medical or dental charges ... as a result of the negligence or intentional act of a third party, and makes a claim to Lincoln National for benefits under the policy for such charges, the insured individual (or legal representative of a minor or incompetent) must agree in writing to repay Lincoln National from any amount of money received by the insured individual from the third party, or its insurer. The repayment will be to the extent of the benefits paid by Lincoln National, but will not exceed the amount of the payment received by the individual from the third party, or its insurer....
 
 
 9
 On March 4, 1986, Martin Den Hartog filed a personal injury lawsuit on his daughter's behalf against Conrail, the owner and operator of the train, and Peter Beck, the engineer. Consistent with the third party limitation provision, Mr. Den Hartog executed written agreements to repay Lincoln National the money it had advanced for Sandra's medical expenses under the Specialty Brands' Plan. The lawsuit was settled on January 26, 1989 for $7 million.[2] As part of the settlement, Sandra's estate reimbursed Lincoln National for the benefits it had advanced on Sandra's behalf, in an amount exceeding $400,000.00.
 
 
 10
 On March 31, 1988, while the lawsuit was still pending, Specialty Brands sold its Thornton Illinois plant to Campbell Soup Company. Mr. Den Hartog consequently became a Campbell employee and a participant in Campbell's Soup Company Group Benefit Plan ("the Plan" or "the Campbell Plan") which was fully funded by Campbell and administered by Provident Life and Accident Insurance Company. Although employees were not furnished with a written summary of the Campbell Plan's provisions until June 1989, they were assured at the time the transition occurred that their insurance benefits would remain the same and were instructed to rely on the terms of the Specialty Brands Plan in determining the extent of their coverage under the new Campbell Plan.
 
 
 11
 Although Sandra became eligible for coverage under the Campbell Plan on March 31, 1988, her eligibility was subject to a pre-existing condition clause, which provided:
 
 
 12
 In the event you or an eligible dependent is totally disabled on the date your benefits with respect to your eligible dependent becomes effective, no benefits will be payable under this Plan for expenses incurred for treatment of the condition causing the total disability until ... the date a person has been covered under this Plan for a period of 12 consecutive months.
 
 
 13
 The Specialty Brands' Plan, however, contained an "Extension of Benefits" provision, which provided:
 
 
 14
 If an individual's insurance terminates because of termination of the policy and while the individual is totally disabled, the Medical Insurance hereunder will be extended with respect to the illness causing the individual to be totally disabled as of the date of termination of the policy. Such benefits will be extended while the insured remains so disabled until the earlier of: (a) twelve consecutive months beyond the date the individual's insurance terminates, or (b) the date the individual becomes eligible for coverage under another plan of group insurance provided such plan does not contain a pre-existing conditions limitation applicable to such individual.
 
 
 15
 Consistent with that provision, Lincoln National continued to pay Sandra's medical expenses from March 31, 1988 to March 31, 1989. When Sandra's coverage under the Specialty Brands' Plan lapsed, Provident began paying her accident-related medical expenses, and continued to do so from April 1, 1989 to June 15, 1991.
 
 
 16
 In June 1989, Campbell published a new Summary Plan Description which described the conditions, limitations, exclusions, and eligibility requirements for receipt of medical benefits under its employee benefits plan. The provisions were virtually identical to those of the Specialty Brands' Plan and, like its predecessor, included a limitation of liability for injuries or illnesses caused by third parties. The Plan specifically provided that:
 
 ACTS OF THIRD PARTIES
 
 17
 Medical care benefits are not payable to or for a person covered under this Plan when the Injury or Illness to the covered person occurs through the act or omission of another person. However, the Provident may elect to advance payment for medical care expenses incurred for an Injury or Illness in which a third party may be liable. For this to happen, the covered person must sign an agreement with the Provident to pay the Provident in full any sums advanced to cover such medical expenses from the judgment or settlement he or she receives.
 
 
 18
 In July 1989, Provident sent Mr. Den Hartog two repayment acknowledgement forms seeking information about the personal injury lawsuit and asserting a right to subrogation. Mr. Den Hartog never signed or returned the forms.
 
 
 19
 After its initial inquiries were ignored, Provident began to investigate the status of Sandra's lawsuit against Conrail. In October or November 1990, it learned that the case had been settled. When Provident's repeated efforts to obtain reimbursement for benefits it had paid on Sandra's behalf were unsuccessful, Campbell exercised its discretion under the third party exclusion and directed Provident to cease payment of all accident-related claims effective June 15, 1991. The present litigation ensued.
 
 
 20
 The parties filed cross-motions for summary judgment in the district court, each contending that there were no genuine issues of material fact which would preclude the entry of judgment in their favor. While the plaintiffs and Campbell argued over whether coverage was excluded under the Acts of Third Parties provision and whether the provision required reimbursement, Provident contended that it should not have been a party to the litigation in the first place, because it was not a fiduciary within the meaning of ERISA. The district court agreed with Provident and granted its motion for summary judgment. It also agreed with Campbell's interpretation of the Acts of Third Parties provision, holding that the provision not only precluded coverage for Sandra's pre-existing condition, but required repayment of all benefits which Campbell and Provident had advanced on Sandra's behalf. The court accordingly granted Campbell's motion for summary judgment and denied the plaintiffs' motion. Provident thereafter sought to recover attorneys' fees and costs as a prevailing party under 29 U.S.C. Sec. 1132(g)(1). Its motion was denied.
 
 II. DISCUSSION
 
 21
 The issues presented on appeal are fairly straight forward: (1) is Provident a fiduciary within the meaning of ERISA; (2) does the third party exclusion provision apply and preclude coverage as a matter of law; (3) is Campbell entitled to restitution; and (4) is Provident entitled to attorneys' fees and costs under 29 U.S.C. Sec. 1132(g)(1)? We address each in turn.
 
 A. Provident's Relationship to the Plan
 ERISA defines a plan fiduciary as follows:
 
 22
 [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 23
 29 U.S.C. Sec. 1002(21)(A).
 
 
 24
 Plaintiffs contend that Provident has the type of discretionary authority and responsibility necessary to qualify as a plan fiduciary, and is therefore liable for any breach of its contractual and fiduciary duties. They cite as examples, plan provisions which give Provident the right:
 
 
 25
 to elect to advance benefits under the Acts of Third Parties provision; to decline payment of benefits if the medical procedures, fees and/or time involved are not itemized; to make the final determination with regard to payment for charges or services or procedures that are not clinically proven safe and effective; and to determine what constituted "satisfactory evidence" of a dependent's good health in determining eligibility.
 
 
 26
 The district court found, however, that Provident was not a "fiduciary" within the meaning of Sec. 1002, because its duties with respect to the Campbell Plan were "ministerial and non-discretionary," Pohl v. National Benefits Consultants, Inc., 956 F.2d 126, 129 (7th Cir.1992); Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1325 (9th Cir.1985); Harris v. Provident Life and Accident Ins. Co., 776 F.Supp. 1450, 1453 (D.Or.1991), and accordingly granted Provident's motion for summary judgment. We have reviewed that decision de novo, Hedberg v. Indiana Bell Telephone Company, Inc., 47 F.3d 928, 931 (7th Cir.1995); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir.1994), and find that Provident was, indeed, entitled to judgment as a matter of law.
 
 
 27
 The undisputed evidence shows that the Campbell Plan was created and fully funded by Campbell. Provident was simply hired to administer the claims process under Campbell's direction and control in accordance with an Administrative Services Agreement. Pursuant to that agreement, Campbell, not Provident, dictates the claims administration procedures and practices which are to be followed, and all benefits eligibility determinations must be made in accordance with those procedures and practices. Campbell also retains the right under the agreement to decide all disputed and non-routine claims. Provident reports all problems in administering the program directly to Campbell, and must account to Campbell on a monthly basis for all payments that it processes.
 
 
 28
 While the plan does provide that "Provident may elect to advance benefits" under the Acts of Third Parties provision, the undisputed evidence clearly demonstrated that Campbell, not Provident, approved the payment of Sandra's claims in 1989, and that Campbell ordered the discontinuation of benefit payments in 1991. It is thus clear from the record as a whole that Provident had no discretion in the administration of the Campbell Plan, and is not a fiduciary within the meaning of ERISA. See Kyle Railways, Inc. v. Pacific Admin. Services, Inc., 990 F.2d 513, 516 (9th Cir.1993) (third party administrators not fiduciaries when they merely perform ministerial duties or process claims); Pohl, 956 F.2d at 129 (plan administrator not a fiduciary where its function was clerical, mechanical, ministerial, and not discretionary); Baker v. Big Star Division, 893 F.2d 288, 290 and n. 2 (11th Cir.1990) ("An insurance company does not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within framework of rules established by employer."); Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir.1987); Howard v. Parisian, Inc., 807 F.2d 1560, 1564-65 (11th Cir.1987); Gelardi, 761 F.2d at 1325 (insurance company hired by employer to administer ERISA plan not a fiduciary when it "performs only administrative functions, processing claims within a framework of policies, rules and procedures established by others"); Harris v. Provident Life and Accident Ins. Co., 776 F.Supp. at 1453 (Provident not a fiduciary of plan regulated by administrative services agreement).
 
 B. Coverage Under the Campbell Plan
 
 29
 In their amended complaint, plaintiffs allege that Sandra is entitled to continued coverage under the Campbell Plan's pre-existing conditions provision, and that Campbell and Provident breached their contractual and fiduciary duties under the Plan by refusing to pay Sandra's medical expenses. To the extent the defendants assert the "Acts of Third Parties" provision as a basis for denying coverage, plaintiffs contend that the provision does not apply because it was not part of the Plan in April 1989 when Sandra became covered. They argue alternatively, that even if the provision may have been a part of the Plan in 1989, it only applies when the injury in question occurred to a "covered person", and therefore does not apply to Sandra because she was not "covered" under the Campbell Plan in 1985 when the injury occurred. Assuming that neither of those arguments prevails, the plaintiffs contend that the defendants should be estopped from denying coverage based on their prior conduct.
 
 
 30
 The district court found that the Campbell Plan has contained a third party limitation or exclusion since its inception in March 1988. When Campbell acquired the Specialty Brands plant, it assured its new employees that their insurance benefits would remain the same and advised them to rely upon the provisions of the Specialty Brands' Plan until further notice when determining their benefits. The third party limitation provision contained in the Specialty Brands' Plan was, thus, a part of the Campbell Plan from its inception. That Mr. Den Hartog had knowledge of the limitation provision and was aware of its implications, is clearly demonstrated by the fact that he agreed to, and did in fact, repay Lincoln National Life for the benefits it had advanced on Sandra's behalf under the Specialty Brands' Plan. When Campbell ultimately issued a new Summary Plan Description in June 1989, it contained the same type of third party exclusion.
 
 
 31
 Plaintiffs' contention that the exclusion is inapplicable in the present case because Sandra was not a "covered person" when the injury occurred is equally without merit. The Plan clearly provides that: "Medical care benefits are not payable ... when the Injury or Illness ... occurs through the act or omission of another person." While the provision also provides that "Provident may elect to advance payment for medical care expenses ... [for] which a third party may be liable", no participant has a right to such payments, even though he or she may be willing to agree to reimbursement. Any and all benefits payable under the Plan, including those which may have been payable for pre-existing conditions, are thus clearly subject to the third party exclusion.
 
 
 32
 Plaintiffs contend in the alternative that, even if the exclusion provision does apply, defendants should be estopped from denying coverage. They maintain that Campbell and Provident have consistently misrepresented their intention to pay Sandra's medical expenses, both verbally and by actually paying benefits for two years; that Mr. Den Hartog relied on those misrepresentations to his detriment by continuing to pay insurance premiums; and that a genuine issue of material fact, therefore, exists as to whether defendants should be estopped from asserting any rights under the third party exclusion provision. As Campbell correctly notes, however, plaintiffs' estoppel argument was effectively raised for the first time on appeal, and is accordingly waived. Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 235 (7th Cir.1991); Manor Healthcare Corp. v. Guzzo, 894 F.2d 919, 922 (7th Cir.1990).C. Campbell's Restitution Claim
 
 
 33
 Campbell sought to recover the amounts which had been advanced on Sandra's behalf on two theories. In Count I of its counterclaim, Campbell sought equitable relief in the form of restitution to enforce the third party exclusion and its reimbursement provision under 29 U.S.C. Sec. 1132(a)(3). Alternatively, Count II purported to state an independent cause of action under the federal common law of unjust enrichment which was recognized in Provident Life & Accident Ins. Co. v. Waller, 906 F.2d 985 (4th Cir.), cert. denied, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). The district court appears to have proceeded under the second theory, holding that "although ERISA did not provide a cause of action for an insurer to recover advances, reimbursement was necessary to prevent unjust enrichment."[3] Harris Trust & Savings v. Provident Life and Acc. Ins. Co., 854 F.Supp. 524, 533 (N.D.Ill.1994). We need not decide which of the two theories is applicable in the present case, however, for they are interrelated and Campbell would prevail under either.
 
 
 34
 29 U.S.C. Sec. 1132(a)(3) expressly provides that:
 
 
 35
 A civil action may be brought--
 
 
 36
 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.
 
 
 37
 Campbell has clearly stated a viable claim for relief under Sec. 1132(a)(3)(B). It is a fiduciary within the meaning of ERISA; the Plan specifically provides for repayment of benefits advanced under the third party exclusion; Campbell's action was initiated to enforce the repayment provision; and Campbell sought "appropriate equitable relief" in the form of restitution. See Mertens v. Hewitt Assoc., --- U.S. ----, ----, 113 S.Ct. 2063, 2069, 124 L.Ed.2d 161 (1993) ("appropriate equitable relief" under Sec. 1132(a)(3) includes "categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)"); Health Cost Controls v. Skinner, 44 F.3d 535, 538 n. 4, 5, and 7 (7th Cir.1995) ("although [plan administrator] clearly cannot recover compensatory damages under [Sec. 1132(a)(3) ], if it successfully makes out a claim for restitution ... it may be entitled to monetary relief"); UIU Severance Pay Trust Fund v. Local Union No. 18-U, 998 F.2d 509, 512-13 (7th Cir.1993) (ERISA permits claim for restitution).
 
 
 38
 Restitution is available, however, "only when one party has been enriched at another's expense." Skinner, 44 F.3d at 538 n. 7. To establish entitlement to the relief it seeks, Campbell must, therefore, demonstrate that:
 
 
 39
 (1) [it] had a reasonable expectation of payment, (2) the [plaintiffs] should reasonably have expected to pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment. C. Kaufman, Corbin on Contracts Sec. 19A, at 50 (Supp.1989).
 
 
 40
 Waller, 906 F.2d at 993-94. It has met that burden in the present case. The undisputed evidence clearly demonstrates that Campbell advanced benefits under the third party exclusion provision with the expectation of being repaid; that the plaintiffs knew that the Campbell Plan contained a third party limitation when they requested and received benefits on Sandra's behalf; and that "the interests of society, as reflected in the goals of ERISA and efficient plan administration, would be served by allowance of an equitable remedy." Waller, 906 F.2d at 993-94.
 
 
 41
 To the extent plaintiffs contend that Campbell waived any right it may have had to restitution by failing to procure a written agreement to repay, their argument is similarly without merit.
 
 As the district court correctly noted:
 
 42
 The third-party provision is a coverage limitation; it does not purport to place duties upon Provident or Campbell ... The plan administrators simply may "elect" to advance payments in appropriate situations. Campbell did not have a contractual duty to procure a signed reimbursement agreement before paying advances. Thus, the failure to procure Martin Den Hartog's signature on the reimbursement forms was not a waiver of Campbell's legal rights under the agreement.
 
 
 43
 Plaintiffs' reliance on Health Cost Controls v. Wardlow, 825 F.Supp. 152 (W.D.Ky.1993), as contrary authority, is misplaced. The district court in Wardlow held that:
 
 
 44
 Fundamental to a decision granting restitution is a determination that the defendant has obtained benefits by improper means ... Defendant Wardow engaged in no unjust conduct. She did not obtain her medical benefits by deceit. She simply requested payment from [Health Cost Controls (HCC) ] and received it. Quite unlike the beneficiary in Waller, Defendant Wardlow had no knowledge of HCC's asserted right to reimbursement when she received her medical benefits. When HCC finally mounted its belated attempt to recover its payments, Defendant Wardlow acted legally and reasonably by refusing to make such reimbursement in the absence of a contractual requirement that she do so. (Emphasis added).
 
 
 45
 Wardlow, 825 F.Supp. at 157-58. Knowledge of the insurer's right to reimbursement was a key factor in determining whether restitution was appropriate in both Wardlow and Waller. Absent that knowledge, the beneficiary could not "reasonably have expected to pay" the insurer for benefits he or she received, and the insurer could not reasonably have expected payment. Unlike the beneficiary in Wardlow, however, Mr. Den Hartog had knowledge of the third party exclusion and Campbell's right to reimbursement when he requested and received benefits on Sandra's behalf. While Campbell's liberal policy of advancing benefits without first procuring a written repayment agreement lends itself to litigation, its right to restitution in the present case is not dependent upon the execution of a written agreement. See Waller, 906 F.2d at 993-94.
 
 D. Provident's Motion for Attorneys' Fees
 
 46
 In its cross-appeal, Provident challenges the district court's denial of its motion to recover attorneys' fees and costs under the fee-shifting provision of 29 U.S.C. Sec. 1132(g)(1). Provident contends that plaintiffs' claims have no basis in fact or in law; that the law recognizes a presumption in favor of awarding fees to the prevailing party under such circumstances; and that the district court abused its discretion by refusing to award fees.
 
 
 47
 29 U.S.C. Sec. 1132(g)(1) provides that: "In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." We will reverse the district court's decision to grant or deny fees only if there has been an abuse of discretion. Brewer v. Protexall, Inc., 50 F.3d 453, 458 (7th Cir.1995).
 
 
 48
 In determining whether fees are appropriate, the court may apply one of two recognized tests. The first test, applied by the district court in this case, requires a determination of whether the losing party's position was "substantially justified".[4] Brewer, 50 F.3d at 458; Production & Maintenance Employees' Local 504 v. Roadmaster Corp., 954 F.2d 1397, 1404-05 (7th Cir.1992); Meredith v. Navistar Int'l Transp. Corp., 935 F.2d 124, 128 (7th Cir.1991).[5] Under that standard, a court may decline to award fees and costs if it finds that: (1) the losing party's position had a reasonable or "solid" basis in law and fact; or (2) special circumstances make an award unjust. Roadmaster, 954 F.2d at 1404; Bittner v. Sadoff & Rudoy Indus., 728 F.2d 820, 830 (7th Cir.1984). The district court found both in the present case. We agree with its assessment, and find no abuse of discretion.
 
 
 49
 While it is true that there is a "modest presumption ... in favor of awarding reasonable attorney's fees to the winning party", Bittner, 728 F.2d at 830; see also Roadmaster, 954 F.2d at 1405, that presumption is not irrebuttable. The positions which plaintiffs took before the district court and on appeal, while unsuccessful, were not indefensible.
 
 
 50
 Contrary to the picture which Provident paints, the line separating fiduciaries from nonfiduciaries in the ERISA context is not a bright one. 29 U.S.C. Sec. 1002(21)(A)(iii) provides that: "[A] person is a fiduciary with respect to a plan to the extent ... he has any discretionary authority or discretionary responsibility in the administration of such plan." On its face, Campbell's Summary Plan Description appears to give Provident the minimal level of discretion required under the statute.[6] It was not until extensive discovery had been completed in the present case that it became apparent that Campbell, not Provident, called all of the shots.
 
 
 51
 The plaintiffs' position with respect to Provident's status is further bolstered by a Department of Labor regulation which states that: "a plan administrator or a trustee of a plan must, by the very nature of his position, have 'discretionary authority or discretionary responsibility in the administration' of the plan within the meaning of section [1002(21)(A)(iii) ] ... [and] will therefore be [a] fiduciar[y]." (Emphasis added). The Fourth Circuit has held, or at least implied, under analogous circumstances that plan administrators such as Provident are thus fiduciaries as a matter of law. See Waller, 906 F.2d at 988 n. 5 ("It is probable ... that Provident could have sued [as a fiduciary] under Sec. 1132(a)(3)"); U.S. Steel Mining Co. v. District 17, United Mine Workers of America, 897 F.2d 149, 152 (4th Cir.1990) (plan administrator "is clearly a fiduciary"). But see Kyle Railways, Inc. v. Pacific Admin. Services, Inc., 990 F.2d 513, 516 (9th Cir.1993) (third party administrators not fiduciaries when they merely perform ministerial duties or process claims); Pohl, 956 F.2d at 129.
 
 
 52
 To the extent Provident contends that the plaintiffs' interpretation of the Plan lacked a factual and legal basis, we must once again disagree. The district court found that the plaintiffs' interpretation of the Plan's provisions was not objectionably unreasonable given the "confusing circumstances", i.e., the fact that: (1) "the benefit plan was instituted after Sandra's accident, but before the $7 million settlement was entered in the suit brought against the responsible parties"; (2) "Sandra was deemed ineligible under the new plan for a year (which could have misled Martin Den Hartog into believing that Sandra ultimately would be covered)"; and (3) "after the year of ineligibility had elapsed, the plan began to pay Sandra's expenses without (initially) requesting reimbursement." The district court thus concluded that there were special circumstances which made an award of fees unjust in the present case. We quite agree, and accordingly deny Provident's request for fees and costs on appeal.III. CONCLUSION
 
 
 53
 For the foregoing reasons, the judgment of the district court is
 
 
 54
 AFFIRMED.
 
 
 
 [1]
 The Honorable Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation
 
 
 [2]
 The settlement generates sufficient annual income to cover Sandra's medical expenses
 
 
 [3]
 The district court cited Waller for the proposition that ERISA did not provide a cause of action for an insurer to recover advances. In Waller, however, Provident did not allege a right to restitution under 29 U.S.C. Sec. 1132(a)(3), rather its claim was premised on Sec. 1132(a)(1)(B), which provides: "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan". Since Provident, the plan administrator, was not a plan participant or beneficiary within the meaning of the statute, the court held that it could not bring suit under Sec. 1132(a)(1)(B). It premised jurisdiction instead upon the federal common law of unjust enrichment. The Fourth Circuit noted, however, that: "It is probable ... that Provident could have sued as a plan administrator under Sec. 1132(a)(3)," Waller, 906 F.2d at 988 n. 5
 
 
 [4]
 To be "substantially justified" the losing party's position needs to be "more than merely not frivolous, but less than meritorious." Bittner v. Sadoff & Rudoy Industries, 728 F.2d 820, 830 (7th Cir.1984)
 
 
 [5]
 The second test requires consideration of the following factors:
 (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the [benefits] plan as a whole; and (5) the relative merits of the parties' positions.
 Nichol v. Pullman Standard, Inc., 889 F.2d 115, 121 n. 9 (7th Cir.1989). See also Brewer, 50 F.3d at 458; Anderson v. Flexel, Inc., 47 F.3d 243, 250 (7th Cir.1995); Roadmaster, 954 F.2d at 1404.
 
 
 [6]
 We cite as but one example the Acts of Third Parties provision which gives Provident, not Campbell, the right to elect to advance payments for injuries caused by a third party tortfeasor