**Linda PLACE, Plaintiff,**

v.

**ABBOTT LABORATORIES, INC. and Lake–Cook Psychologists and Counseling Associates, Defendants.**

**No. 94 C 5491.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 3, 1996.

Linda Place, Waukegan, IL, Pro Se.

Kenneth D. Breisman, The Office of General Counsel, Abbott Laboratories, Inc., Abbott Park, IL, Hubert O. Thompson, Carney & Brothers, Chicago, IL, for Defendant Abbott Laboratories, Inc.

Randy Sue Schreiber, Querrey & Harrow, Ltd., Chicago, IL, for Defendant Lake–Cook Psychologists and Counseling Associates.

COAR, District Judge.

The court adopts in its entirety the report and recommendation of Magistrate Judge Morton Denlow, dated April 24, 1996. Defendant Lake–Cook's motion for summary judgment is granted. Judgment if entered in favor of defendant Lake–Cook and against plaintiff Linda Place on Count III of the amended complaint.

### REPORT AND RECOMMENDATION

DENLOW, United States Magistrate Judge.

TO: THE HONORABLE DAVID H. COAR
TO: UNITED STATES DISTRICT COURT

Plaintiff Linda Place ("Plaintiff") has filed a five-count *pro se* amended complaint against Abbott Laboratories, Inc. ("Abbott") and Lake–Cook Psychologists and Counseling Associates ("Lake–Cook") arising out of Plaintiff's employment and termination at Abbott. Lake–Cook, an independent medical provider, is a party only to Count III. In Count III, Plaintiff alleges that Lake–Cook interfered with her rights under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), by refusing to administer an independent medical examination. Lake–Cook has filed a motion for summary judgment to Count III contending that as a non-employer, independent medical provider, it was not liable to Plaintiff under ERISA. Lake–Cook explains that it refused to administer the independent medical exam because Plaintiff insisted on operating a tape recorder during the exam.

Lake–Cook did not violate ERISA by exercising its medical judgment not to proceed with the exam unless Plaintiff turned off her tape recorder. For the reasons set forth below, the Court should grant Lake–Cook's motion for summary judgment.

### I. FACTUAL BACKGROUND

Plaintiff was employed by Abbott from February 25, 1986 to November 17, 1992. (Plaintiff's Response to Lake–Cook's Motion for Summary Judgment Statement of Material Facts (hereinafter "12(N)" ¶ 7.)) While employed by Abbott, Plaintiff was a participant in the disability plan under ERISA. (12(N) ¶ 8.)

From July, 1991 through November, 1991, Plaintiff complained to the Abbott Human Resources Department of sexual harassment by her supervisor. (12(N) ¶ 9; Lake–Cook's Reply Memorandum In Support of Summary Judgment (hereinafter "Reply") at 2.) Abbott responded to Plaintiff's complaints by attempting to reassign her to another unit. (Reply at 2; Response To Lake–Cook's Statement of Facts in Plaintiff's Surreply To Lake–Cook's Summary Judgment Motion (hereinafter "Surreply") ¶ 5.) Subsequently, in November of 1991, Plaintiff took a disability leave of absence from Abbott due to depression and post-traumatic stress disorder. (Reply at 2; Surreply ¶ 7.) Following her disability leave, Plaintiff was released by her therapist to return to full work duties on May 15, 1992. (12(N) ¶ 10.)

On May 18, 1992, Dr. Brockton L. Weisenberger, Director of Corporate Employee Health at Abbott, and other Abbott employees decided that additional medical information regarding Plaintiff's mental state was necessary based on a concern that Plaintiff may be a danger to herself or others. (Reply at 3; Surreply ¶¶ 13–14.)

On May 19, 1992, Lake–Cook agreed to perform and administer an independent medical examination ("IME") of Plaintiff pursuant to a provider agreement between Lake–Cook and CNR Health, Inc., a non-party, who is the managed care provider for Abbott employees (Lake Cook Ans. ¶ 36). A variety of psychological testing and a therapy session was to be included in the examination. Plaintiff did not keep her first scheduled appointment on June 12, 1992. On August 20, 1992, Plaintiff came into Lake–Cook's

offices and met with Dr. John D. Jochem, a clinical psychologist, for the purposes of submitting to a mental status examination as requested by Abbott. (Jochem Aff. ¶ 2.) At that meeting, Plaintiff insisted on tape recording the mental status examination and any psychological testing which was to be administered. Dr. Jochem would not allow Plaintiff to tape record the examination, and Plaintiff declined to proceed with the examination unless she was allowed to tape record. The examination was terminated. (Lake–Cook's Facts ¶ 3; 12(N) ¶ 3; Jochem Aff. ¶ 3.) Dr. Jochem never discussed with anyone, nor was he aware of Plaintiff's ERISA benefits.

After Plaintiff left Lake–Cook's offices, Dr. Jochem telephoned Dr. Weisenberger and informed him of Plaintiff's refusal to participate in the IME without tape recording. Dr. Jochem informed Dr. Weisenberger that he was still willing to conduct a medical examination of Plaintiff, however, he was unwilling to do so if tape recorded. (Lake–Cook's Facts ¶¶ 4–5; 12(N) ¶¶ 4–5; Jochem Aff. ¶ 4.)

Dr. Jochem had no further personal contact with Plaintiff. (Lake–Cook's Facts ¶ 6.) However, Dr. Jochem did receive a letter from Plaintiff, dated August 20, 1992, detailing the events of that morning. (12(N) ¶ 6; Exhibit 1 to Exhibit C of Lake–Cook's Motion for Summary Judgment.) In the letter, Plaintiff states "On being seated there [at Dr. Jochem's office], I removed a tape recorder from my briefcase. With the tape recorder in full view, I proceeded to tape record the IME. You refused to continue with the tape recorder. I left." *Id.* The letter goes on to impliedly threaten Lake–Cook with possible litigation unless Lake–Cook acceded to her demand stating "Your actions are interfering with my employment relationship and with obtaining employee benefits covered by ERISA. Please reconsider your decision and contact me to reschedule the IME, which I will tape record, as is my right." On September 8, 1992, Abbott again requested that Plaintiff participate in an IME. (Reply at 3; Surreply ¶ 20.)

On September 15, 1992, Dr. Jochem sent a letter to Dr. Weisenberger which outlined Lake–Cook's contact with Plaintiff and included a $75.00 bill for his services. (Motion Ex. C, 3.). Effective November 17, 1992, Plaintiff was terminated by Abbott. (Response, Ex. 2.). Dr. Jochem never conducted an examination of Plaintiff. (Reply at 2 & 4; Surreply ¶¶ 3 & 23.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *Celotex Corporation v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

When reviewing the record on summary judgment, the court must draw all reasonable inferences in the light most favorable to the nonmovant. *Hill v. Burrell Communications Group, Inc.,* 67 F.3d 665, 667 (7th Cir.1995). To avert summary judgment, however, plaintiff must do more than raise "some metaphysical doubt as to the material facts." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted)). A dispute about a material fact is genuine only if the evidence presented is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A summary judgment proceeding is not a vehicle for the resolution of factual disputes; it is designed to determine whether there is any material dispute of fact that requires a trial. *Id.*

## III. SUMMARY OF ANALYSIS

Lake–Cook's motion raises the following issues:

1) Whether Section 510 of ERISA, 29 U.S.C. § 1140, bars an action against a nonemployer. The court holds that it does not. (See Section III.A.1.)

2) Whether Lake–Cook is entitled to judgment as a matter of law in connection with Plaintiff's claim under 29 U.S.C. § 1140. The court holds that Lake–Cook is entitled to judgment as a matter of law on Count III of the amended complaint. (See Section III. A.2.)

3) Whether Lake–Cook is a fiduciary under 29 U.S.C. § 1140. The court holds that it is not. (See Section III.B.)

4) Whether Lake–Cook is liable as a co-conspiring non-fiduciary under 29 U.S.C. § 1140. The court holds that it is not. (See Section III.C.)

## A. Scope of ERISA

### 1. Non-employer liability

█ The parties disagree as to whether a non-employer can be held liable under Section 510 of ERISA, 29 U.S.C. § 1140. Section 510 of ERISA provides in relevant part that:

> It shall be unlawful for *any person* to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled to under the plan.... 29 U.S.C. § 1140. (emphasis supplied.)

The plain language of 29 U.S.C. § 1140 states that "any person" shall be liable for the prescribed actions. 29 U.S.C. § 1140. ERISA defines person as an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization. 29 U.S.C. § 1002(9). Under Section 510 of ERISA, a claimant is not limited to bringing suit against his or her employer. *Custer v. Pan American Life Insurance Co.*, 12 F.3d 410, 421 (4th Cir.1993). ("... we cannot agree with the defendants that congress intended to limit those who could violate § 1140 to employers."). Therefore, we now turn our attention to determine whether Lake–Cook's conduct violates ERISA.

## 2. Action in Violation of Section 510

█ Section 510 "prohibits the discharge of an employee 'for the purpose of interfering with the attainment of any right to which such participant may become entitled' under an employee benefit plan." *Kross v. Western Elec. Co., Inc.*, 701 F.2d 1238, 1242 (7th Cir.1983). "The emphasis of a Section 510 action is to prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan." *Tolle v. Carroll Touch, Inc.*, 977 F.2d .1129 (7th Cir. 1992). Plaintiff asserts that by preventing her from tape recording her IME, Lake–Cook prevented her from meeting the qualifications of her benefit plan. (Response at 7.)

Lake–Cook did not "discharge, fine, suspend, expel, discipline or discriminate" against Plaintiff. The decision to discharge Plaintiff was made by Abbott, not Lake–Cook. Lake–Cook did not discriminate against Plaintiff by refusing to permit Plaintiff to tape record the IME. There is no showing that Lake–Cook permitted others to tape record their IME. Lake–Cook was not required to permit Plaintiff to use her tape recorder. Lake–Cook did not make the decision to terminate Plaintiff, nor was it consulted as to whether Plaintiff should be terminated. Lake–Cook's decision to refuse to perform an IME is simply not actionable.

Plaintiff's argument would subject independent medical advisors to the threat of expensive ERISA litigation, as here, if the independent medical advice is later used by the employer in connection with its employment decision. ERISA was not intended to be a weapon against the provision of independent medical advisors. Plaintiff's threat to Lake–Cook constitutes a gross misuse of ERISA and clearly falls outside the scope of Section 510.

## B. Identification of Fiduciaries

Alternatively, Plaintiff contends that Lake–Cook is a "fiduciary" covered under ERISA. Plaintiff argues that because Dr. Jochem possessed discretion in administering

the IME, Lake–Cook acted as a fiduciary of her benefit plan.

"Under ERISA, an individual is a fiduciary with respect to a plan if he exercises discretionary authority over the *management or administration* of that plan." *McGath v. Auto–Body N. Shore, Inc.*, 7 F.3d 665, 670 (7th Cir.1993); 29 U.S.C. § 1002(21)(A). Specifically, ERISA provides that a person is a fiduciary to the extent that:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Fiduciary duties attach to particular person performing particular duties. *Id.* However, ministerial and non-discretionary duties are not enough to qualify Lake–Cook as a fiduciary. *Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.*, 57 F.3d 608, 613 (7th Cir.1995). Plaintiff argues that because Lake–Cook had authority in administering Plaintiff's IME and had discretion in what would be included in the examination, Lake–Cook is a fiduciary under the meaning of ERISA. Plaintiff contends that Lake–Cook has the type of discretionary authority and responsibility necessary to qualify as a fiduciary. In support of her contentions, Plaintiff asserts that the outcome of the IME was the only factor used by Abbott in determining whether or not Plaintiff could be reinstated to work.

This court disagrees. The plan was administered and managed by Abbott. Lake–Cook was retained to administer an IME. Once Lake–Cook refused to administer the IME, the decision was up to Plaintiff and Abbott as to how to proceed. Under Plaintiff's theory, every exercise of medical discretion relating to a plan physical makes the doctor a plan fiduciary. The exercise of medical discretion as to whether or not to permit an IME to be tape recorded is not subject to ERISA. Plaintiff's claim is clearly beyond the purpose and intent of ERISA.

Lake–Cook did not make the decision to not schedule an IME with another provider. Lake–Cook did not make the decision to insist on using a tape recorder; Plaintiff did. Lake–Cook did not make the decision to terminate Plaintiff. Lake–Cook had no discretion in the administration of the Abbott plan and is not a fiduciary under ERISA. *See Harris Trust & Sav. Bank*, 57 F.3d at 612 (not a fiduciary of plan regulated by administrative services agreement); *Associates in Adolescent Psychiatry v. Home Life Ins. Co.*, 941 F.2d 561, 570 (7th Cir.1991) (holding that professionals who advised the plan were not fiduciaries because they had no "decision making authority over the plan or plan assets" also noting that "the power to act for the plan is essential to status as a fiduciary").

ERISA cannot be read so expansively to include Lake–Cook as a fiduciary. "[T]he terms 'discretionary authority,' 'discretionary control,' and 'discretionary responsibility' in § 1001(21)(A) ... [speak] only to actual decision-making power rather than influence that a professional may have over the decisions made by plan managers and administrators." *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531 (7th Cir.1991); *See also Anoka Orthopaedic Assoc. v. Lechner*, 910 F.2d 514, 517 (8th Cir.1990) (lawyer who designed the plan and consultant who administered the plan were not fiduciaries; *Painters of Philadelphia District Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1150 (3rd Cir.1989) (attorney who gave professional advice concerning plan is not a fiduciary)). Here, Lake–Cook possessed no actual decision making power over Plaintiff's plan.

## C. *Non–Fiduciary Liability*

A non-fiduciary may be liable under ERISA if it conspires with a fiduciary to breach duties imposed by ERISA. *Thornton v. Evans*, 692 F.2d 1064, 1078 (7th Cir.1982). "A necessary element of plaintiffs' claims against the non-fiduciary defendants, is that they conspired with fiduciaries ...." *Id.* at

1078, n. 34. "Proving that a conspiracy existed to violate a beneficiary's ERISA rights is one means to assert liability against fiduciaries. It can even extend liability to person who cannot be considered fiduciaries under ERISA." *Vogel v. Independence Fed. Sav. Bank,* 692 F.Supp. 587, 594 (D.Md.1988).

 Plaintiff asserts that Lake–Cook incurs liability under ERISA because Lake–Cook conspired with Abbott employees to prevent Plaintiff from receiving employment benefits. There is simply no evidence supporting Plaintiff's claim of conspiracy between Lake–Cook and Abbott. The relationship between Lake–Cook and Abbott did not transcend the usual relationship between a professional and its client. Lake–Cook's bill for $75.00 does not make them a co-conspirator.

There is no evidence that any actions taken by Abbott were done at Lake–Cook's insistence or control or that any actions taken by Lake–Cook were done at Abbott's insistence or control. Lake–Cook simply advised Plaintiff and Abbott that it would not proceed with an IME if Plaintiff insisted on using a tape recorder. Lake–Cook did not coerce or otherwise influence Abbott to fire Plaintiff.

Furthermore, there is no evidence that Lake–Cook discriminated against Plaintiff by refusing to perform an IME when Plaintiff insisted on using her tape recorder. There is no competent evidence that other patients were permitted to tape record their IME sessions.

### IV. CONCLUSION

Lake–Cook did not become liable under ERISA for failing to perform an independent medical examination of Plaintiff when she insisted on using her tape recorder during the exam. Plaintiff's claim against Lake–Cook borders on the frivolous and would seriously undermine the willingness of third parties, such as Lake–Cook, to provide independent medical evaluations.

For the foregoing reasons, **it is hereby recommended that Lake–Cook's motion for summary judgment be GRANTED and that JUDGMENT BE ENTERED IN FA-VOR OF LAKE–COOK AND AGAINST PLAINTIFF LINDA PLACE ON COUNT III OF THE AMENDED COMPLAINT.**

DATE: April 24, 1996.