**UNIVERSITY OF CHICAGO HOSPITALS, Plaintiff,**

v.

**CENTRAL STATES SOUTHWEST AND SOUTHWEST AREAS HEALTH AND WELFARE PLAN, et al., Defendants.**

No. 96 C 8357.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 24, 1997.

**1112**

Erik Blumberg of Knepper & Moga. P.C., Chicago, IL, for Plaintiff.

Francis J. Carey of Central States Southeast and Southwest Health And Welfare Plan, Des Plaines, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This action by the University of Chicago Hospitals ("Hospitals") against the Central States, Southeast and Southwest Areas Health and Welfare Fund and its Trustees (collectively "Fund") and Teamsters Union No. 142 Health and Welfare Fund and its Trustees (collectively "142 Fund") was originally brought in the Circuit Court of Cook County. Fund timely removed the action to this District Court, and on the following day (still within the 28 U.S.C. § 1446(b) 30–day time limit) 142 Fund consented in writing to the removal, thus perfecting it (see *Roe v. O'Donohue*, 38 F.3d 298, 301 (7th Cir.1994)).

After 142 Fund had moved for summary judgment under Fed.R.Civ.P. ("Rule") 56, on August 5, 1997 Hospitals voluntarily dismissed their claim against the 142 Fund defendants. As against Fund, however, Hospi-

tals seek a declaration of health insurance coverage and the payment of medical bills incurred as a result of the hospitalization of Joseph Sever ("Sever"). Because this action involves employer-sponsored welfare benefit plans, it necessarily implicates the Employee Retirement Income Security Act of 1974 ("ERISA," 29 U.S.C. §§ 1001–1461),[1] thus supporting the removal of the action to this District Court.

All remaining parties have now moved for summary judgment under Rule 56. They have complied with General Rule ("GR") 12(M) and 12(N), adopted by this District Court to facilitate the resolution of Rule 56 motions, under which the litigants must respectively submit factual statements in support of and in opposition to such motions.[2] With the cross-motions now fully briefed, the issues are ready for decision.

For the reasons stated in this memorandum opinion and order, this Court holds that Fund did not arbitrarily and capriciously deny Sever's claim for medical benefits. Accordingly Fund's motion is granted, while Hospitals' is denied and this action is dismissed.

### Summary Judgment Standards

Familiar Rule 56 principles impose on a party seeking summary judgment the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters., Inc.*, 116 F.3d 262, 265 n. 2 (7th Cir.1997)). Where as here cross-motions for summary judgment are involved, it is necessary to adopt a dual perspective—one that this Court has often described as Janus-like—that sometimes involves the denial of both motions. That problem does not arise here because the underlying facts are not in dis-

1. Citations to ERISA provisions will take the form "ERISA § —," referring to the statutory numbering in Title 29 rather than to ERISA's internal section numbering.

2. Fund's statement will be cited "CS 12(M) ¶ —" and Hospitals' response will be cited "H. 12(N) ¶ —." Unless otherwise noted, each cited statement was either explicitly or implicitly admitted in the corresponding response.

pute. Instead the parties are at odds about whether, as a matter of law, Fund's Trustees ("Trustees") properly exercised their duties as administrators of their benefit plan.

*Facts*

Fund has established an Employee Welfare Benefit Plan ("Plan") as a self-funded group health plan administered by Trustees pursuant to Articles IV and V of Fund's Trust Agreement ("Trust Agreement" or, where a specific provision is being cited, "TA")(CS 12(M) ¶¶ 1–3; TA Art. IV § 17; TA Art. V § 2). Employees participate in the Plan "when their employers, pursuant to the requirements of collective bargaining agreements, negotiated with affiliates of the International Brotherhood of Teamsters, make contributions on their behalf to provide medical, dental, vision and life insurance coverage to covered participant[s] and their families" (CS 12(M) ¶ 8).

On December 17, 1992 Trustees unanimously approved the acceptance into Fund coverage of 4200 actively employed participants from some 284 companies that had previously been contributing to the 142 Fund on behalf of those participants. Those new participants were subject to several conditions. Of particular importance to this case, medical coverage was conditional on a participant being deemed an "active employee" within the meaning of the Plan as of January 31, 1993 (*id.* ¶¶ 12–14).[3]

Sever was an employee of Central Distributing Company ("Central"), one of the companies that became a new contributor to Fund on January 31, 1993 (CS 12(M) ¶ 16; H. 12(N) ¶¶ 6–7). As of that date Sever ceased to be an eligible participant in the 142 Fund (F. 12(M) ¶ 7). Instead Fund received health contributions from Central on Sever's behalf from January 31, 1993 through March 13, 1993 (CS 12(M) ¶ 22; H. 12(N) ¶ 8), suggesting that Sever was an active employee covered by the Plan. But both before and throughout that period Sever suffered from an advanced stage of amyotrophic lateral sclerosis ("ALS," commonly referred to as Lou Gehrig's Disease)(H. 12(N) ¶ 9). That illness affected Sever's upper and lower extremities and the muscles controlling his speech, swallowing and breathing (CS 12(M) ¶ 18).

On February 15, 1993 Sever was admitted to Hospitals, where he remained until he was discharged on March 10, 1993 (CS 12(M) ¶ 19; H. 12(N) ¶¶ 10–11). During that hospital stay Sever incurred approximately $100,-000 in medical expenses (CS 12(M) ¶ 21). Sever died on the following day, March 11 (CS 12(M) ¶ 20; H. 12(N) ¶ 13).

Sever's widow Darlene timely presented a claim to Trustees for all of the expenses incurred as a result of Sever's hospitalization (H.12(N) ¶ 14). Due to the nature of Sever's illness, Trustees questioned whether he had been eligible for benefits under the Plan (CS Ex. 2 at 2). While Fund had initially paid $1,941.60 in benefits,[4] Trustees denied the remaining claims because they determined that Sever's medical condition precluded his having been an "active employee" as defined by the Plan on January 31, 1993, thus rendering him ineligible for coverage (CS 12(M) ¶ 23; H. 12(N) ¶ 15).[5]

On February 18, 1994 Fund wrote Sever's widow a letter denying her claim for medical benefits on behalf of her husband (CS Ex. 2 at 16–18). In accordance with the ERISA procedures and requirements for notification when a plan administrator decides to deny a benefit claim (see 29 C.F.R. § 2560.503–1(f)), Fund gave the specific reason for that denial, referred to the pertinent plan provisions on which the denial was based, described any additional information that Sever's widow might have submitted to perfect the claim

---

3. This provision in the agreement between Fund and 142 Fund dealt with that aspect of a participant's *employment status* (CS Ex. 1 at 4)(emphasis in original):

Employees on Loss of Time (short-term disability), Sick Leave *or any other form of absence* from the company that keeps them from being considered "active" employees will not be covered by the Plan *until they return to work and* contributions are resumed.

4. That payment had been approved in the ordinary course by Fund's staff people, not by Trustees themselves.

5. Evidence on which Trustees relied in making that determination, as well as evidence suggesting that Sever was in fact an active employee, will be addressed later, in conjunction with the substantive legal discussion.

and explained the next step for appellate review. Sever's widow took all of the steps required to perfect a timely appeal of Trustees' denial of medical benefits, but to no avail (CS 12(M) ¶ 48; H. 12(N) ¶ 35). On May 25, 1994 the Level II Claim Appeal Committee denied the claimed benefits. And finally, on November 29, 1994 Trustees affirmed the denial of coverage in the Level III Claim Appeal Procedure, the final step in the review process.

Before his discharge from the hospital, Sever had assigned his right to receive health benefits to Hospitals (CS 12(M) ¶ 50; H. 12(N) ¶ 36). In this action Hospitals as assignee sued Fund, alleging that Trustees had breached their fiduciary duties by arbitrarily and capriciously denying Sever's widow's claim for medical benefits (CS 12(M) ¶ 51; H. 12(N) ¶ 37).

### Breach of Duty Under ERISA

*ERISA Standard of Review*

ERISA § 1132(a)(1)(B) expressly authorizes suits by participants or their beneficiaries against fiduciaries and plan administrators to challenge benefit eligibility determinations, and Hospitals as assignee thus stand in the shoes of a permitted ERISA plaintiff. While ERISA itself does not prescribe the appropriate standard of judicial review for such actions, *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989) has definitively set out that standard for the review of benefit eligibility questions and health plan interpretations:

> Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

■ Where a plan confers power on the administrator to exercise discretion, a highly deferential arbitrary-and-capricious standard of review is called for (*Chojnacki v. Georgia–Pacific Corp.,* 108 F.3d 810, 814 (7th Cir. 1997)). To determine what degree of deference (if any) to accord to Trustees' determination that Sever was not eligible for bene-

fits, this opinion must first examine the Plan's language to see whether it conferred any discretionary authority on Trustees. In that respect this Court reviews the contractual language of the Plan de novo (*Ramsey v. Hercules Inc.,* 77 F.3d 199, 205 (7th Cir. 1996)).

■ Two provisions of the Trust Agreement inform the necessary analysis (CS Ex. 3 at 13–14):

> **Article IV, Sec. 17.** The Trustees, by majority action, shall have the power to construe the provisions of this Agreement and the terms and regulations of the Health and Welfare Plan; and any construction adopted by the Trustees in good faith shall be binding. . . . The Trustees are vested with discretionary and final authority in construing plan documents of the Health and Welfare Fund.

> **Article V, Sec. 2.** The Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Fund and including Trustee decisions upon claims for benefits by participants and beneficiaries of the Fund and including Trustee decisions construing plan documents of the Fund.

No magic words are required to confer discretionary authority on Trustees (*Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan,* 102 F.3d 1435, 1437–38 (7th Cir.1996)). Here there can be no question that the Trust Agreement explicitly vests Trustees with substantial discretion to determine eligibility for benefits and to construe the Plan's terms. Because the clear and unambiguous quoted language does so, this Court is not free simply to decide whether it agrees with Trustees' denial of benefits. Rather, Trustees' decision must be reviewed deferentially under the arbitrary-and-capricious standard (*Trombetta,* 102 F.3d at 1437)—and Hospitals' submissions on the current motions concede that.

■ This Court is not without guidance in assessing whether a denial of benefits under ERISA § 1132(a)(1)(B) is "arbitrary and capricious ." To establish that, Hospitals must show that Trustees "abused their discretion—which is to say, that they were not just

clearly incorrect but downright unreasonable" (*Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990)).

### Review of Trustees' Denial [6]

■ As stated earlier, the Plan limits coverage to expenses incurred by "active employees" (CS 12(M) ¶¶ 12–14). Trustees relied on that limitation to deny Sever's claim, finding that he was not an "active employee" during the relevant time period. Hospitals challenge that determination as arbitrary and capricious. Under the controlling standard of review, such a challenge must fail unless Hospitals show, based on the evidence, that Trustees' decision was "downright unreasonable" (*Chojnacki*, 108 F.3d at 816, quoting *Fuller*, 905 F.2d at 1058).

■ Trustees based their denial of Sever's benefit claim on a consideration of various factors:

1. Central's payroll records showed (a) that Sever was on sick leave during the weeks ended February 5, 1993 and February 11, 1993 and (b) that Sever did not receive wages after January 29 of that year (CS 12(M) ¶¶ 25–31).

2. Sever's hospital admission form dated February 15, 1993 states that he was retired (CS Ex. 2 at 23), a statement that conflicts with Hospitals' assertion that Sever was actively employed as of January 31 of that year (CS 12(M) ¶ 27).

3. There was evidence that Sever was a co-owner of Central, not a member of the collective bargaining unit, and thus ineligible for medical benefits under the Plan (CS 12(M) ¶¶ 40–42).

4. Perhaps most importantly, after an extensive review of Sever's medical records, Trustees' medical consultant Dr. Buckingham stated that Sever could not have been working before his hospital admission, given his medical condition (CS 12(M) ¶¶ 45–47; Ex. 2 at 5–7).

In opposition to those factors, Hospitals point to other evidence that would support a determination that Sever was an active employee until the time of his hospitalization:

1. Five co-workers signed affidavits stating that Sever worked at Central until he was hospitalized on February 15, 1993 (CS Ex. 2 at 49–54).

2. Central's bookkeeper-secretary Marlene Glisich sent Trustees a letter dated August 24, 1993 stating that Sever "was actively working when the new group came into the Fund" and that the sick leave notations in the payroll records were made erroneously (CS Ex. 2 at 78; H. 12(N) ¶ 19).

3. Central's President Nick Sever proffered this explanation for the sick leave notations on Sever's payroll record card (CS Ex. 2 at 59; H. 12(N) ¶ 23):

> The sick leave notation was erroneously made long after Mr. Sever's death, by an outside accountant not personally familiar with the facts.

4. Hospitals challenge the veracity of Sever's hospital admission form stating he was retired, noting that the form contained the wrong home address for Sever and did not indicate that Sever himself provided the information in the form (H.12(N) ¶ 25).

5. In his August 19, 1993 letter to Fund, Sever's treating physician Dr. Roos confirmed Sever's ability to perform his job duties before his hospitalization (CS Ex. 2 at 79; H. 12(N) ¶ 21):

> Even though Mr. Sever was affected [in the upper and lower extremities as well as the muscles involved with speech, swallowing and breathing] he was able to perform his regular job duties up until his hospitalization on 2/15/93;

6. Hospitals criticize Dr. Buckingham's opinion for several reasons, arguing that he rendered the opinion under a conflict of interest,[7] that he selectively reviewed med-

---

**6.** In general, as *Chojnacki*, 108 F.3d at 815 (citations omitted) says:

> The first factor to pin down in determining whether [Trustees] acted arbitrarily is whether [they] operated under a conflict of interest. While a conflict of interest does not change the standard of review we apply to an administrator's decision, it will cause us to give the arbitrary and capricious standard more bite. The

more serious the conflict, the less deferential our review becomes.

Here the analysis is not complicated by any contention that Trustees had a conflict of interest (see *Fuller*, 905 F.2d at 1058).

**7.** Hospitals contend that Dr. Buckingham's position as Trustees' medical consultant created an inherent conflict of interest that made reliance on his opinion improper. That position is reject-

ical evidence [8] and that he failed to consider the nature of Sever's job duties in forming his opinion that Sever could not work (H.12(N) ¶¶ 27–33).

7. Beyond those specific challenges to CS Trustees' construction of the Plan, Hospitals take issue with the degree of diligence (or lack thereof) with which Trustees investigated Sever's claim before making their denial.

Those contentions do no more than to confirm that what was posed to Trustees involved a judgment call. And it can no more be said that Trustees' determination on one side of the critical "active employee" issue was arbitrary and capricious than it could have been said that a decision going the other way would have been vulnerable to rejection under that standard. Trustees reviewed considerable evidence in the administrative record supporting both parties' positions before they determined that Sever was not actively employed as of January 31, 1993 and hence was not eligible for health and welfare benefits under the Plan. And under the highly deferential arbitrary-and-capricious standard of review, such questions of judgment are within Trustees' purview.

■ As our Circuit's ERISA § 1132 case law frequently states (see, e.g., *Gallo v. Amoco Corp.*, 102 F.3d 918, 921 (7th Cir. 1996)), the issue for this Court is not whether Trustees' determination was correct but rather whether they abused their discretion—that is, acted arbitrarily and capriciously—in denying Sever's benefits claim. This Court may not reweigh the evidence—it is entitled to overturn Trustees' denial of benefits only if that denial was clearly unreasonable. Because Trustees had a reasonable basis for the denial of coverage, their informed decision fell within the discretionary authority vested in them as confirmed by

*Firestone* and its progeny, thus ending the inquiry. ·

### Attorneys' Fees and Costs

■ Both Hospitals and Fund request an award of attorneys' fees under ERISA § 1132(g)(1), which provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.*, 57 F.3d 608, 616 (7th Cir.1995) recognizes two tests to assess whether such a fee award is appropriate, either of which tests may be applied by this Court.

■ Under the first test it must be decided whether the losing party's position was "substantially justified" (*id.*)—that is, "more than merely not frivolous, but less than meritorious" (*Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir.1984)). While there is a "modest presumption" that prevailing parties are entitled to reasonable attorneys' fees (*Little v. Cox's Supermarkets*, 71 F.3d 637, 644 (7th Cir.1995)), "a court may decline to award fees and costs [under the substantial justification test] if it finds that: (1) the losing party's position had a reasonable or 'solid' basis in law and fact; or (2) special circumstances make an award unjust" (*Harris Trust*, 57 F.3d at 617).

■ Under the second test a court is called on to consider five factors (*Brewer v. Protexall, Inc.*, 50 F.3d 453, 458 (7th Cir.1995)(internal citations omitted)):

> (1) the degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees would deter other persons acting under similar circumstances; (4) the amount

of interest that merits vacating Trustees' denial of Sever's benefit claim.

8. Hospitals assert that Dr. Buckingham did not accord sufficient weight to the "Quality of Life" surveys completed by medical professionals as part of Sever's participation in an ALS Treatment Study. Those forms indicated that though Sever's ALS caused him to adjust his lifestyle, he was still able to work (H.12(N) ¶¶ 29,31).

ed in light of our Court of Appeals' opinion in *Exbom v. Central States, S.E. & S.W. Areas Health & Welfare Fund*, 900 F.2d 1138 (7th Cir.1990). There the Court, in discussing conflicting medical opinions in another case involving the selfsame Fund, stated that Trustees were entitled to rely on the opinion of the selfsame consultant Dr. Buckingham in the face of some medical evidence to the contrary (*id.* at 1143–44). There is no more basis here for characterizing Dr. Buckingham's opinion as tainted by a serious conflict

of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions.

This Court sees no reason to tick off each of those factors in turn, for the differently labeled substantial justification test is not really different in kind from the five-factor test (see *Little,* 71 F.3d at 644).

As *Ahng v. Allsteel, Inc.,* 96 F.3d 1033, 1037 (7th Cir.1996) reconfirms, attorneys' fees should not be awarded to the prevailing party if "the losing party's position is substantially justified and taken in good faith." It must be said here that Hospitals presented a substantially justified, good faith argument that Sever was an "active employee." This opinion has made it abundantly clear that Trustees' resolution of a judgment call in that respect would have had to be upheld whichever way it came out—that was the necessary consequence of the highly deferential arbitrary-and-capricious standard of review. This Court declines to award attorneys' fees or costs to either party.

### Conclusion

There is no genuine issue of material fact, and Fund is entitled to a judgment as a matter of law. Its Rule 56 motion is granted, while Hospitals' motion is of course denied. This action is dismissed.